A. LYLE DAVIS AND RAY JAY WEISNER, RESIDENTS AND TAXPAYERS OF IREDELL COUNTY, NORTH CAROLINA, IN THEIR OWN INTEREST AND IN THE INTEREST OF ALL OTHER RESIDENTS AND TAXPAYERS OF IREDELL COUNTY WHO MAY MAKE THEMSELVES PARTIES TO THIS ACTION V. IREDELL COUNTY, NORTH CAROLINA, a BODY POLITIC AND CORPORATE, DULY CREATED BY THE STATE OF NORTH CAROLINA

No. 7022SC488

(Filed 16 September 1970)

1. Counties § 6— taxpayers' action — proposed county courthouse — alleged irregularities in procedure

In taxpayers' action alleging certain irregularities by the county in the purchase of land on which to locate a proposed government center consisting of a courthouse and jail, the evidence presented by the county was sufficient to establish that the county commissioners were following correct statutory procedures relating to notice to the public of the proposed center. G.S. 153-9(9).

2. Counties § 6; Taxation § 6— taxpayers' action — proposed county courthouse — necessary expense — necessity for vote

In taxpayers' action alleging certain irregularities by the county in the purchase of land on which to locate a proposed government

center consisting of a courthouse and jail, there was no merit to the taxpayers' contention that the purchase of the land was not a necessary expense under the Constitution and that the county commissioners exceeded their authority when they purchased these tracts without first having the purchase approved by the voters, since the tracts in question were purchased from funds already on hand in the form of surpluses in the capital improvement fund and there was consequently no need for approval by the voters. N. C. Constitution, Art. VII, § 6.

**3. Counties § 6— taxpayers' action — proposed county courthouse — capital reserve fund**

In taxpayers' action alleging certain irregularities by the county in the purchase of land on which to locate a proposed government center consisting of a courthouse and jail, the question whether the county commissioners failed to follow statutory requirements for the accumulation of a capital reserve fund to be used for the development of the government center *held* not presented by the record of the case, since there was no showing that a capital reserve fund was ever established by the county. G.S. 153-142.1 *et seq.*, G.S. 153-114.

APPEAL by plaintiffs from *Bowman, S.J.*, 16 March 1970 Session of IREDELL Superior Court.

Plaintiffs brought this action as residents and taxpayers of Iredell County in their own behalf and in behalf of other residents and taxpayers alleging irregularities in the purchase of land on which to locate a proposed government center in that a unanimous vote had not then been taken to relocate the county courthouse and jail, that appraisals of the land were not made, that the county accumulated monies in a capital reserve fund out of which to pay for the center without first adopting a resolution as required by G.S. 153-142.3, that defendant has expended these capital reserve funds without first adopting a resolution approving the expenditure of these funds as required by G.S. 153-142.8, and that defendant failed to make any findings that the proposed land purchase is needed for governmental purposes. Plaintiffs requested that the purchases be declared null and void, and that the defendant be enjoined from continuing under the plan or the resolution of 5 January 1970 that authorized action under the plan. Plaintiffs also sought a preliminary injunction.

Defendant moved under Rule 12 to dismiss the complaint for failure to state a claim upon which relief can be granted. A hearing was held on plaintiffs' motion for a preliminary in-

junction and on defendant's motion for dismissal for failure to state a claim upon which relief can be granted.

At this hearing, the plaintiffs' evidence tended to show that there had been no resolutions by the Board of County Commissioners concerning the establishment or the use of a capital reserve fund, nor had such a fund been established. A capital improvement fund did exist and consisted of surpluses from the general fund and a specific capital improvement levy of two cents per one hundred dollar valuation in the fiscal year 1969-70. A resolution was passed by the Board of County Commissioners on 5 January 1970 that the County begin purchase of properties in the two-block area contemplated for the government center with the first phase of the plan being the relocation of the courthouse and jail. The resolution authorized the purchase of land for the courthouse and jail as well as other land for the proposed center as it became available or might be needed. The resolution provided that the funds for these purchases were to come from the capital improvement fund and that the project would be financed on a pay-as-you-go basis. Provision was also made in the resolution for the appraisal of the properties before they were bought. Three tracts of land were purchased in the month of January 1970 pursuant to the resolution for a sum of $25,500.00. In addition, $50,000 was placed in escrow for the purchase of another tract of property. Notice of the proposal to relocate the courthouse and jail and to hold a final vote on 4 May 1970 was published 4 February 1970, 4 March 1970, and was scheduled to be published 4 April 1970.

Defendant's evidence presented the same basic facts with the following additions. The selection of the site for the new government center was the culmination of years of planning by the Board and the conclusion that the existing buildings could not be properly renovated. The cost estimate for the new courthouse was $725,000 and for the jail $350,000. Provision was made in the plans so that if funds ran low, the new jail would not be equipped until the funds did become available. Currently there is $650,000 in the budget under a capital improvement fund, and it is anticipated that $411,000 will be available from discoveries, penalties, and other unforeseen sources, with the development planned on a pay-as-you-go basis. Neither the courthouse nor the jail are to be located on any of the land already purchased. The Board contemplates the same method of funding the courthouse and jail as was used in 1965-66 to build the

present courthouse annex—that is—by accumulation of surpluses for capital improvements.

The trial judge, after making certain findings of fact, made conclusions of law to the effect that the erection of the courthouse and jail were necessary county expenses under Article VII, sec. 6, of the Constitution of North Carolina; that the Board had the authority to purchase property necessary for any county building; that the present site cannot be changed except by unanimous vote of the Board; that the Board has the authority under G.S. 153-9 (8a) to levy a special tax for constructing and equipping courthouses and jails as well as for acquiring land for the sites; that the defendants are performing their duties under G.S. 153-9 (8), (8a), and (9); that the provisions of the General Statutes with respect to the establishment of capital reserve funds are not controlling here; and the complaint was dismissed on the grounds that it failed to state a claim upon which relief can be granted under Rule 12.

From these findings plaintiffs appeal to this Court.

*Raymer, Lewis & Eisele by Douglas G. Eisele for plaintiff appellant.*

*Chamblee, Nash and Frank by Jay F. Frank for defendant appellee.*

CAMPBELL, J.

[1]   Plaintiffs assign as error the dismissal of the action by the trial judge under Rule 12 of the North Carolina Rules of Civil Procedure for failure to state a claim upon which relief can be granted. They allege that the defendant did not follow the proper statutory procedures in purchasing land and entering contracts in furtherance of a plan to move the Iredell County Courthouse, jail and other public buildings to a new site.

Plaintiff first argues that the defendant began the purchase of land in January 1970 in connection with the development of a new government center without first complying with G.S. 153-9 (9), which reads as follows:

"(9)   To Designate Site for County Buildings.—To remove or designate a new site for any county building; but the site of any county building already located shall not be changed, unless by a unanimous vote of all the members of the board at any regular monthly meeting, and unless

upon notice of the proposed change, specifying the new site. Such notice shall be published in a newspaper printed in the county, if there is one, once in each of three calendar months, and posted in one or more public places in every township in the county for three months, next immediately preceding the monthly meeting at which the final vote on the proposed change is to be taken. Provided that where the notice is published in a newspaper printed in the county it shall not be necessary to post the notices in the townships. Such new site for the county courthouse shall not be more than one mile distant from the old, except upon the special approval of the General Assembly."

However, the evidence presented at the hearing does not bear this contention out. In a resolution of 5 January 1970, the Board of County Commissioners contemplated the move of the courthouse and jail to the site of a proposed new government center. Following this resolution the machinery to provide notice and a final vote pursuant to the above statute was set in motion. At the time of the hearing two of the required monthly notices had been published. During the month of January 1970 three tracts of land were also purchased for the new government center under the authority of the 5 January 1970 resolution. However, neither the courthouse nor the jail nor any existing county building to which the statute applies, were planned for any of these three tracts, as it was shown at the hearing. Indeed, the evidence indicated that the County had entered into no binding contracts regarding the purchase of land for the erection of the courthouse or the jail, only non-obligatory options had been acquired. All of the evidence shows that the Board of County Commissioners is following the correct statutory procedure regarding the relocation of the courthouse and jail. They have set the proper statutory procedure in motion and have entered no obligations regarding the proposed move.

[2]   Plaintiffs next contend that the purchase of the three tracts of land for the proposed new government center is not a necessary expense under the Constitution of North Carolina and that the Board exceeded its authority when it purchased these tracts without first having it approved by a majority in an election. The relevant constitutional language is found in Article VII, sec. 6 of the North Carolina Constitution and provides as follows:

". . . No county, city, town, or other municipal corporation

shall contract any debt, pledge its faith or loan its credit, nor shall any tax be levied or collected by any officers of the same except for the necessary expenses thereof, unless approved by a majority of those who shall vote thereon in any election held for such purpose."

A close reading of this provision indicates that it contemplates a contracting of an obligation to be paid at some future time. Here the land in question was purchased from funds already on hand in the form of surpluses in the capital improvement fund. This falls clearly within the rule laid down in *Adams v. Durham,* 189 N.C. 232, 126 S.E. 611, where the city wanted to build an auditorium with funds received from the sale of a lot and city building. The court found that this was not a necessary public purpose but was a public purpose. Referring to the constitutional provision, the court stated: ". . . But this provision, in our opinion, has no application to the facts of this record, where, as stated, the funds to be applied are already on hand and the proposed expenditure will impose no further liability on the municipality, nor involve the imposition of further taxation upon it. . . ." See also *Goswick v. Durham,* 211 N.C. 687, 191 S.E. 728, where the Court said: ". . . The acquisition of the land [for an airport] from surplus funds was not beyond the power of the city and it in no way offended the provisions of Article VII, sec. 7, [now sec. 6] of the Constitution. . . ." Under these principles, there is no merit in this contention of the plaintiffs.

[3] Plaintiffs' final contention is that the defendant failed to follow the statutory requirements for the accumulation of a capital reserve fund which is to be used for the development of the new government center. But on close examination of the record, there is no showing that a capital reserve fund was ever established. Without the establishment of a capital reserve fund, the requirements of G.S. 153-142.1 *et seq.* regarding the establishment and use of capital reserve funds never come into play.

The evidence shows that the defendant did not attempt to establish "capital reserve funds" pursuant to G.S. 153-142.1. Instead the Board of County Commissioners in the instant case proceeded under the general authority of G.S. 153-114 wherein it is provided "[e]ach county shall maintain the following funds and *such other funds* as the board of county commissioners may require. . . ." (Emphasis added.) Pursuant to this authoriza-

tion, the Board of County Commissioners did "set up and appropriate a fund for capital improvements for Iredell County." "The budget resolution did not, itself, set forth the particulars of any capital reserve program. It set forth only the amount of the appropriation and the source of the funds." On this evidence Judge Bowman found as a fact, "[t]hat present and past Boards of Iredell County Commissioners, in anticipation of the need for new county facilities, have, for at least seven years, allocated funds for capital improvements, to be used for providing new county facilities by budgeting for capital improvements, spending only those funds which were absolutely necessary, and accumulating the surplus, and budgeting the same from year to year." There is no allegation that the Board of County Commissioners acted improperly under these statutory provisions. The interesting question as to whether this method of accumulating a capital improvement fund is valid is not presented under this record, and we have not passed on it.

The evidence supports the findings of fact, and the findings of fact support the conclusions of law.

We find

No Error.

BRITT and VAUGHN, JJ., concur.